IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | CRIM. NO.  06-011-3 |
| v. : | |
| : | CIVIL NO. 10-5336 |
| IAN GREENSTEIN, JR. : | |

<u>MEMORANDUM</u>

**SURRICK, J.**                                                                                                   **APRIL 29 , 2016**

Presently before the Court is Petitioner's pro se Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody.  (ECF No. 201.)  For the following reasons, Petitioner's Motion will be denied.

**I.    BACKGROUND**

   **A.    Factual Background[1]**

At approximately 11:00 p.m. on February 11, 2005, two masked gunmen entered the Casa Bella restaurant at 2625 East Tioga Street in Philadelphia, and robbed the pizza shop at gunpoint.  One of the men was later identified as Petitioner.  *Greenstein*, 322 F. App'x 259 at 261.  Petitioner's co-defendant, Allen French, also entered the restaurant, and a third defendant, John Zgrzepski, drove the getaway vehicle.  *Id.* at 261, 263.  Petitioner managed to evade Philadelphia Police Department ("PPD") officers on the night of the robbery after an extensive foot chase.  *Id.* at 262.  His two co-defendants were arrested during the early morning hours of February 12.  *Id.*  Petitioner was arrested three days after the robbery.  (Pet'r's § 2255 Mem. 8, ECF No. 201.)  Petitioner was indicted by a federal grand jury on January 10, 2006.  (ECF No.

---

[1] We need not restate the full details of the crime, investigation, and arrest here.  A detailed description of the events of February 11, 2005, can be found in the Third Circuit's detailed opinion disposing of Petitioner's direct appeal, *United States v. Greenstein*, 322 F. App'x 259, 260 (3d Cir. 2009).

1.) The case against Petitioner was based upon testimony from eyewitnesses to the robbery, identifications made by PPD Officer Michael Walsh, who had chased Petitioner on the night of the robbery, videotapes from Casa Bella's internal security surveillance system, and other physical evidence linking Petitioner and his co-defendants with the robbery.

### B.     Procedural History

On July 11, 2006, Petitioner was convicted by a jury of interfering with interstate commerce by robbery, in violation of 18 U.S.C. §§ 1951(a) and 2, and knowingly using and carrying a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. §§ 924(c)(1)(A) and 2. (ECF No. 162.) Petitioner was subsequently sentenced by the Honorable James T. Giles to 15 years in federal prison, to be served after any outstanding period of state incarceration had been completed. (*Id.*) Petitioner was also sentenced to a five year term of supervised release. (*Id.*)

Petitioner appealed his conviction and sentence, claiming that the trial court had erred in refusing to suppress pretrial identifications, denying his motions for a mistrial based on allegedly inflammatory prosecutorial statements, and improperly assessing Petitioner's appropriate United States Sentencing Guidelines range. (ECF No. 163.) On April 23, 2009, the Third Circuit rejected these arguments and affirmed Petitioner's sentence. *Greenstein*, 322 F. App'x 259. The Supreme Court denied Petitioner's request for a writ of certiorari on October 5, 2009. *Greenstein v. United States*, 558 U.S. 929 (2009).

In August 2007, Petitioner filed a petition for habeas relief under Section 2255, alleging that his rights were violated during his pretrial transfer from state to federal custody. (*See Greenstein v. United States Marshal for the E.D. Pa.*, Civ No. 07-3232, ECF No. 1.) Judge Giles adopted a Report and Recommendation issued by Magistrate Judge Lynne A. Sitarski, and

2

dismissed Petitioner's habeas petition as premature.  (Report and Recommendation, Civ. No. 07-3232, ECF No. 25; Order Adopting Report and Recommendation, ECF No. 26.)

Petitioner filed a new Motion seeking a writ of habeas corpus on October 8, 2010.  (Pet'r's § 2255 Mem.)  Following several requested extensions, the Government filed a response to Petitioner's Motion.  (Gov't. Resp., ECF No. 206.)  Thereinafter, Petitioner filed a reply to the Government's response.  (Pet'r's Reply, ECF No. 207.)

## II.	LEGAL STANDARD

Pursuant to 28 U.S.C. § 2255, a federal prisoner may move the sentencing court to vacate, set aside, or correct a sentence "upon the ground[s] that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a).  Relief under this provision is generally available "to protect against a fundamental defect which inherently results in a complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure." *United States v. DeLuca*, 889 F.2d 503, 506 (3d Cir. 1989).

While the Court may in its discretion hold an evidentiary hearing on a § 2255 petition, *Gov't of the Virgin Islands v. Forte*, 865 F.2d 59, 62 (3d Cir. 1989), such a hearing need not be held if the "motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *see also United States v. Day*, 969 F.2d 39, 41-42 (3d Cir. 1992).  "[V]ague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation by the District Court." *United States v. Thomas*, 221 F.3d 430, 437 (3d Cir. 2000) (citation omitted); *see also United States v. McCoy*, 410 F.3d 124, 134 (3d

Cir. 2005) (reasoning that an evidentiary hearing is mandated only when a petition "alleges [] facts warranting relief under § 2255 that are not clearly resolved by the record").

## III. DISCUSSION

Petitioner asserts five grounds for relief: (1) the court erred when it precluded him from submitting alibi evidence, (2) he was deprived of due process when the Government waited until trial to notify Petitioner that it intended to admit into evidence a photograph used to identify Petitioner, (3) he was transferred into federal custody in violation of the Interstate Agreement on Detainers ("IAD"), 18 U.S.C.A. § APP. 2, (4) trial and appellate counsel were ineffective for failing to diligently pursue Petitioner's alibi defense claims, and (5) trial counsel was ineffective for failing to have the federal indictment of Petitioner dismissed under the IAD. (Pet'r's § 2255 Mem. 11-37.)

### A. Procedural Default

A claim challenging a defendant's conviction and sentence should be raised on direct appeal. *See Bousley v. United States*, 523 U.S. 614, 621 (1998) (reasoning that a defendant's claims "can be attacked on collateral review only if first challenged on direct review"). An issue that could have been raised on direct appeal, but was not, is subject to procedural default. *United States v. Frady*, 456 U.S. 152, 162-67 (1982); *United States v. Jenkins*, 333 F.3d 151, 154-55 (3d Cir. 2003). Such claims are waived unless the prisoner can show either (1) actual innocence or (2) cause excusing the procedural default and actual prejudice resulting from the error. *Frady*, 456 U.S. at 168. Acceptable examples of "cause" in this context are those that are "external to the defense," and include "interference by the state with the conduct of a defense or the previous unavailability of the factual or legal basis of a claim." *Cristin v. Brennan,* 281 F.3d 404, 420 (3d

Cir. 2002). The "mere inadvertence of the petitioner or [his] counsel to take an appeal" is not cause to excuse a potential procedural default. *Id.*

        *1.*        *Alibi Defense Claim*

Petitioner claims that the trial court erroneously denied his request to call witnesses who would have assisted him in presenting an alibi defense. (Pet'r's § 2255 Mem. 11.) Specifically, Petitioner argues that his sister and mother would have testified that, at the time of the robbery, Petitioner was babysitting his sister's children while his sister was giving birth at Temple University Hospital. (*See* Pet'r's § 2255 Mem. App. 2-3.) The trial court, citing Rule 12.1 of the Federal Rules of Criminal Procedure, denied Petitioner's request to call alibi witnesses or introduce alibi evidence, noting that Petitioner failed to comply with the timing requirements imposed by Rule 12.1 for notifying the Government of intention to pursue an alibi defense. (*See* Pet'r's § 2255 Mem. App. 12-13; Supp. H'rg Tr. 104, ECF No. 79.) The Government argues that this claim is procedurally defaulted because Petitioner did not raise it on direct appeal. (Gov't Resp. 8.)

Petitioner does not point to any cause for his failure to appeal the trial court's decision. As to a claim of actual innocence, Petitioner fails to controvert the overwhelming evidence against him. A man identified by Officer Walsh as Petitioner was seen within minutes of the robbery huddling with two other men who were later convicted of this same crime. *Greenstein*, 322 F. App'x at 261. Petitioner was wearing the same clothing as one of the gunmen captured on video surveillance. *Id.* at 262. Petitioner was also identified as one of the gunmen by a co-defendant's sister who had seen the video surveillance footage. *Id.* Petitioner's so-called alibi witnesses do not specifically place him anywhere at the time of the crime. Petitioner's mother stated only that she saw Petitioner with his sister's children on February 10, the night before the

5

crime occurred. Petitioner's sister stated only that Petitioner was supposed to be watching her children at the time of the robbery. (Pet'r's § 2255 Mem. App. 5-6.) The only reasonable inference to be made from their respective statements to defense investigators is that Petitioner should have been at his mother's home watching the children instead of at the pizza shop committing the crime for which he was convicted. Petitioner offers no evidence, other than his own assertions, to substantiate a claim of innocence. Petitioner must persuade us that, "in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Schlup v. Delo*, 513 U.S. 298, 329 (1995); *see also Sweger v. Chesney*, 294 F.3d 506, 522-23 (3d Cir. 2002). Considering the overwhelming evidence presented against Petitioner, it is unreasonable to presume that the presentation of Petitioner's alibi witnesses would have altered the jury's verdict in any way.

    2.  *Withheld Photograph Claim*

 Petitioner's next claim relates to a photo that the Government turned over to the defense on the first day of Petitioner's jury trial. Petitioner claims that the Government withheld the photo until trial, thereby depriving him of the opportunity to use it at a suppression hearing in an attempt to exclude various pretrial identifications, and that this deprivation was a violation of *Brady v. Maryland*, 373 U.S. 83 (1963). (Pet'r's § 2255 Mem. 22.) The photo to which Petitioner refers was signed by Traci Zgrzepski, the witness who identified Petitioner and was the sister of Petitioner's co-defendant. (*Id.*) The Government argues that regardless of the merits of Petitioner's claim, it is procedurally barred because it was not raised on direct appeal. (Gov't. Resp. 10-11.)

Petitioner did not raise this issue on direct appeal. Therefore, the claim is procedurally defaulted. Petitioner can overcome the procedural bar only if he satisfies one of the above mentioned exceptions.

Petitioner does not offer cause for his failure to appeal, except to say that appellate counsel ignored his requests to submit the issue. As previously discussed, inadvertence of counsel to submit an issue on appeal does not establish cause excusing procedural default. *Cristin*, 281 F.3d at 420.

With regard to any challenge to Ms. Zgrzepski's identification of Petitioner, this is not a situation in which a single photograph was used to suggest an unknown criminal actor.[2] It has already been established that Ms. Zgrzepski "immediately recognized" Petitioner as an acquaintance of her brother's and "as one of the robbers in the video" when he came to her door the night of the robbery. *Greenstein*, 322 F. App'x at 262. Ms. Zgrzepski knew Petitioner and could have identified him in any number of ways. There is no reason to suspect that had the Government turned over this photograph earlier, it would have exonerated Petitioner, or created a situation whereby no juror could find him guilty beyond a reasonable doubt.

**B.     Interstate Agreement on Detainers Claim**

Petitioner next claims that his rights under the Interstate Agreement on Detainers were triggered when Judge Giles issued a writ of habeas corpus ad prosequendum to compel his transfer to federal custody and subsequent appearance for judicial proceedings. (Pet'r's § 2255 Mem. 19-21.) Petitioner argues that because he did not receive a hearing prior to being transferred from state to federal custody, as required by the IAD, the Court should vacate his conviction and sentence. (*Id.* at 21.) The Government responds that because Petitioner was

---

[2] Petitioner argues that this is the prejudicial impact of the photograph.

transferred pursuant to a writ of habeas corpus ad prosequendum, and not a detainer, the IAD's protections do not apply. (Gov't. Resp. 12.)

The Interstate Agreement on Detainers, 18 U.S.C. App. II, was created in 1970 pursuant to the Interstate Agreement on Detainers Act ("IADA"), Pub. L. 91-538. Congress enacted the IADA in the hope of "eliminating problems associated with the transfer of prisoners" incarcerated in one jurisdiction "to another jurisdiction seeking to prosecute him on different or related charges." *United States v. Williams*, 615 F.2d 585, 588 (3d Cir. 1980). "The basic goal of the Act is to prevent transfers back and forth between competing jurisdictions, its theory being that such transfers undermine the right to a speedy trial and the rehabilitative process of the system in which the prisoner is currently serving a sentence." *Id.*

The Supreme Court has held that the protections of the IAD vest only if a detainer has been issued. *United States v. Mauro*, 436 U.S. 340, 358 (1978). "A detainer, issued by a prosecutor or law official, is notification to prison officials that a prisoner is wanted in another jurisdiction. A writ of habeas corpus *ad prosequendum*, by contrast, is issued by a court and secures the presence of the prisoner for trial purposes." *United States v. Jones*, 938 F.2d 447, 449 (3d Cir. 1991). Therefore, if a writ of habeas corpus ad prosequendum is the means by which federal authorities obtain physical custody over a prisoner, the IAD is not triggered, and the defendant is not entitled to its protections. *Id.*; *see also Mauro*, 436 U.S. at 358.

Prior to his federal indictment, Petitioner was serving a sentence at the State Correctional Institution-Retreat. Petitioner was summoned from state custody following his indictment. Judge Giles issued a writ of habeas corpus ad prosequendum on January 13, 2006, and Petitioner was placed in the custody of the United States Marshal on February 3, 2006. (Report and

8

Recommendation 2-3.) No detainer was used at any point in this process.[3] Consequently, none of the rights or privileges afforded by the IAD, including the right to a pre-transfer hearing, apply in the instant case. Because Petitioner was not deprived of any rights, he has no basis on which to proceed. Accordingly, his request for relief based on the denial of IAD rights is denied.

### C. Ineffective Assistance of Counsel

Ineffective assistance of counsel claims may be raised for the first time in § 2255 motions. *Massaro v. United States*, 538 U.S. 500, 509 (2003). To succeed on such a claim, a petitioner must demonstrate that an attorney's error was both professionally unreasonable and prejudicial to the outcome of the proceeding. *Strickland v. Washington*, 466 U.S. 668, 687-98 (1984). Although not insurmountable, this is a high bar. "A court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689; *see also Harrington v. Richter*, 562 U.S. 86, 105 (2011). The deference is particularly strong with respect to counsel's strategic choices. *Virgin Islands v. Weatherwax*, 77 F.3d 1425, 1433-34 (3d Cir. 1996). Even if a petitioner establishes that an attorney's error was professionally unreasonable, he must also demonstrate a reasonable probability that, but for that error, the outcome of the proceeding would have been different. *Strickland*, 466 U.S. at 694 (citation omitted).

---

[3] Petitioner contends that a bench warrant issued on January 10, 2006, by Magistrate Judge Strawbridge constituted a detainer that should have triggered IADA provisions. "[A] detainer is a notification filed with the institution in which a prisoner is serving a sentence, advising that he is wanted to face pending criminal charges in another jurisdiction." *Mauro*, 436 U.S. at 359 (citations and internal quotation marks omitted). It is clear from the records kept by State Institution Retreat that the warrant was never lodged as a detainer with the appropriate corrections officials in Pennsylvania. (Gov't. Resp. Ex. B.)

### *1.     Failure to Pursue Alibi Claim*

Petitioner first argues that he received ineffective assistance of counsel as a result of his attorneys' failure to introduce his alibi defense. Petitioner claims that trial counsel was ineffective for failing to investigate and present his alibi in accordance with the Federal Rules of Criminal Procedure, and that his appellate counsel was ineffective for failing to appeal the trial court's denial of Petitioner's request to admit alibi evidence. (Pet'r's § 2255 Mem. 27.) The Government claims that Petitioner cannot carry the heavy burden which *Strickland* requires him to bear. (Gov't. Resp. 14.) Under the two-part test of *Strickland*, Petitioner must demonstrate that his attorneys' performance was deficient and that he was prejudiced by the deficiency. 466 U.S. at 687. Petitioner cannot satisfy either of these requirements.

Petitioner's trial counsel filed a notice of intention to employ an alibi defense on June 27, 2006, several months after Petitioner's federal indictment and a week prior to the scheduled commencement of Petitioner's jury trial. (Supp. Hr'g Tr. 104.) At the time, the Government noted that it had "specifically requested" alibi notice "many, many months ago," and only received it on the day of the suppression hearing, June 28, 2006. (*Id.*)

Federal Rule of Criminal Procedure 12.1 requires criminal defendants who wish to rely on an alibi defense to notify the Government of such intentions within 14 days of the Government's request for such notice. Fed. R. Crim. P. 12.1(a). If the defendant fails to submit the required information, the trial court "may exclude the testimony of any undisclosed witness regarding the defendant's alibi." Fed R. Crim. P. 12.1(e). A court is permitted, but not required, to grant an exception to the timeliness requirement if "good cause" exists to do so. Fed. R. Crim. P. 12.1(d).

Petitioner claims that counsel committed two fundamental errors: not diligently investigating his alibi defense and presenting it earlier; and failing to object to Judge Giles' denial of the notice as untimely. (Pet'r's § 2255 Mem 33.) Petitioner's claim that counsel failed to object to Judge Giles' denial is baseless. Petitioner's trial counsel did, in fact, object to the denial. (Supp. Hr'g Tr. 101-04.) Judge Giles then made clear that the notice would be denied. (*Id.* at 104-05.) Counsel reiterated his opposition to the denial minutes later, only to be rebuffed again. (*Id.* at 110.) That counsel was unsuccessful in his objection does not speak to counsel's effectiveness.

With regard to the claim that counsel's ineffectiveness was the reason for the untimely filing of an alibi notice, we note that the delay in filing is universally attributed to Petitioner himself. Indeed, Petitioner notes that he did not notify counsel of his prospective alibi defense until May 20, 2006, little more than a month prior to trial. (Pet'r's § 2255 Mem 12.) Petitioner implies that in waiting a month to file this notice, counsel was ineffective. (*Id.*) We disagree for two reasons. First, it would be unreasonable to expect counsel to file such notice immediately, without any further investigation of the matter. A hurried filing of notice without any investigation or inquiry into its validity would not constitute diligent and thoughtful representation of a client. Second, even if counsel had immediately filed the notice, the record reveals that the motion would still have been untimely under Rule 12.1, because it would not have been filed within 14 days of the Government's notice request.

At the hearing, Petitioner's counsel claimed that the delay in filing an alibi notice was attributable to Petitioner's distrust of his attorneys. (Supp. Hr'g Tr. 10, 103.) Indeed, we note that Petitioner requested new counsel on May 5, 2006. A hearing was held on this issue on May 17, 2006, and Mr. Bostic was to appointed assist Mr. Edelin in representing Petitioner shortly

11

thereafter.  (ECF Nos. 48, 50, 53.)  Judge Giles noted, however, that Petitioner was responsible for "not having trusted counsel sufficiently to apprise him" of the alibi defense.  (Supp. Hr'g Tr. 104.)  Petitioner bears responsibility for his own mistakes and miscalculations.  Trial counsel's conduct did not fall below "an objective standard of reasonableness under prevailing professional norms."  *Buehl v. Vaughn*, 166 F.3d 163, 169 (3d Cir. 1999) (citing *Strickland*, 466 U.S. at 688).

Petitioner further argues that appellate counsel failed to raise this issue on appeal.  (Pet. 34.)  Specifically, Petitioner claims that this argument was the "one true winner."  (*Id.*)

An attorney is not ineffective for failing to raise every issue suggested by a defendant. *Jones v. Barnes*, 463 U.S. 745, 751 (1983).  Instead, appellate counsel is entitled to "winnow[] out weaker arguments on appeal and focus[] on one central issue if possible, or at most on a few key issues." *Id.* at 751-52.  This question might have been a legitimate ground for appeal. Nevertheless, on this record we do not believe that Judge Giles' ruling on this matter would have been reversed.  "Authority in the trial judge to exclude evidence for noncompliance is contemplated by the wording and history of" Rule 12.1.  *United States v. Fitts*, 576 F.2d 837, 839 (3d Cir. 1978).  We note that in *Fitts*, an ineffective assistance of counsel claim based on a similar set of facts, but with an attorney whose experience and competence were far less pronounced than any of Petitioner's attorneys in this case, the Third Circuit deferred to the trial court's discretion to act under Rule 12.1(e).

Appellate counsel raised three issues on appeal.  We cannot fault counsel for failing to litigate a fourth claim that lacked a real prospect of success.  Counsel sought out the most advantageous legal terrain from which to mount an attack on Petitioner's conviction and sentence.  Such strategic decision-making falls within the definition of constitutionally competent representation under the Sixth Amendment.

Finally, even if one were to somehow conclude that Petitioner's counsels' performance was deficient, Petitioner has not established prejudice.  As we discussed above, Petitioner's so-called alibi witnesses do not specifically place him anywhere at the time of the crime.  We cannot reasonably conclude that testimony about where Petitioner was the night before the crime and where he *should* have been on February 11, 2005 at approximately 11:00 p.m. would have changed the jury's verdict.  The evidence against Petitioner was overwhelming.  There is no prejudice here.  *See Harrington*, 562 U.S. at 90 (reasoning that "there must be a substantial likelihood of a different result" to satisfy prejudice under *Strickland*).

### 2. Failure to Pursue IAD Claim

In his final claim, Petitioner alleges that counsel was ineffective for failing to pursue dismissal of the indictment against him on the grounds that he had been improperly detained under the IAD.  (Pet. 35.)  As discussed above, Petitioner's case did not, and does not, implicate the IAD.  (*See supra* § III.B.)

Petitioner's counsel cannot be faulted for failing to raise a meritless claim.  "There can be no Sixth Amendment deprivation of effective counsel based on an attorney's failure to raise a meritless argument."  *United States v. Sanders*, 165 F.3d 248, 253 (3d Cir. 1999).  Had Petitioner's counsel raised an IAD claim before Judge Giles, it would have been rejected.  Petitioner's counsel thus had no obligation to bring it before the court.  Because failure to raise a meritless claim does not amount to ineffective assistance of counsel, Petitioner's fifth claim is denied.

## IV. CONCLUSION

For the foregoing reasons, Petitioner's Habeas Corpus Motion under 28 U.S.C. § 2255 will be denied. No certificate of appealability shall issue.[4]

An appropriate Order follows.

                                                  **BY THE COURT:**

                                                  */s/R. Barclay Surrick*
                                                  **U.S. District Judge**

---

[4] A certificate of appealability may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Petitioner has made no such showing. No reasonable jurist would find this assessment to be debatable or wrong.